UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | FILED: SEPTEMBER 2, 2008 |
| Plaintiff, | ) | 08CV4975 |
| | ) | JUDGE GRADY |
| v. | ) | MAGISTRATE JUDGE COLE |
| | ) | |
| 000 LIGHT HOUSE ROAD, | ) | CH |
| OREGON, ILLINOIS 61061, | ) | |
| Property Tax Code: 16-246-400-0016, | ) | |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

**VERIFIED COMPLAINT FOR FORFEITURE**

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, for its verified complaint against the above-named defendant property, alleges in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure as follows:

1. This complaint has been verified by the attached affidavit of Special Agent Marc D. Folven of the Drug Enforcement Administration ("DEA"), which is fully incorporated herein.

**Jurisdiction and Venue**

2. This is an *in rem* forfeiture action brought pursuant to 21 U.S.C. § 881(a)(7) for the forfeiture of the defendant real property which was used and intended to be used to facilitate narcotics trafficking, a felony violation of 21 U.S.C. § 841(a)(1).

3. This court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A), as certain of the acts giving rise to this forfeiture action occurred within the Northern District of Illinois.

4.  Venue is proper pursuant to 28 U.S.C. § 1395(b) in as much as the defendant property is located and will remain within this jurisdiction during the pendency of these proceedings.

## Specific Allegations

5.  As set forth in detail below, there is probable cause to believe that the defendant property was used and intended to be used to facilitate felony violations of 21 U.S.C. § 841(a)(1), and therefore is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7). The defendant property subject to forfeiture is commonly known as 000 Lighthouse Road, Oregon, Illinois 61061 (hereinafter the "Lighthouse Road property") and legally described as follows:

> Part of the West Half of the Southeast Quarter of Section 26, Township 23 North, Range 10 East of the Fourth Principal Meridian, Ogle County, Illinois described as follows: Commencing at the Southeast corner of the said West Half of the Southeast Quarter of Section 26; thence Northerly on the East line of the said West Half of the Southeast Quarter, 1321.50 feet; thence Westerly at an angle of 88 degrees 08 minutes 46 seconds measured clockwise from the last described course, 768.68 feet more or less to a point 547.0 feet East of the West line of the said West Half of the Southeast Quarter (as measured on the Westerly extension of the last described course) said point being the point of the beginning of the tract of land being described; thence Easterly on the last described course, 371.68 feet to a point 397.0 feet Westerly of the said East line of the West Half of the Southeast Quarter of Section 26; thence Southerly parallel with the said East line of the West Half of the Southeast Quarter of Section 26, 548.0 feet; thence Southeasterly at an angle of 104 degrees 03 minutes 16 seconds measured clockwise from the last described course, 341.00 feet more or less to a point on a line, 66.0 feet perpendicularly distant Westerly of and parallel with the said East line of the West Half of the Southeast Quarter of Section 26; thence Southerly on said line parallel with the East line of the West Half of the Southeast Quarter, 680.04 feet more or less to a point on the South line of the said West Half of the Southeast Quarter; thence Westerly on said South line, 699.69 feet more or less to a point on 547.0 feet East of the Southwest corner of the said West Half of the Southeast Quarter of Section 26; thence Northerly parallel with the West line of the said West Half of the Southeast Quarter, 1322.04 feet more or less to the said point of beginning.
>
> Property Tax Code:   16-246-400-0016.

6.  On July 10, 2008, at approximately 9:30 a.m., Illinois State Police ("ISP") Blackhawk Task Force Inspector Josh Fillers spoke with a confidential source (hereinafter referred to as the

"CS"), who requested to remain anonymous, in reference to possible marijuana plants the CS had located on a parcel of land in rural Ogle County, Illinois. The CS stated he/she first observed the marijuana plants in July 2008 when he/she was looking for wild berries. The CS stated the plants, which he/she suspected to be marijuana, were protected by chicken wire. The CS stated it appeared that the chicken wire was placed in a manner around the plants to protect the plants from being eaten by animals. The CS stated he/she would be able to take ISP Inspector Fillers to the location of the plants. The CS also stated he/she had observed a young white male driving a black pick-up truck on the property on previous occasions. The CS believed the male he/she observed within the pick-up truck was possibly related to the property owner, whom he/she knows only as "William."

7.      ISP Inspector Fillers researched the parcel of land in Ogle County through "Beacon," a web-based Geographic Information System. The "Beacon" identified the land parcel as parcel number 16-246-400-0016. The "Beacon" also revealed that the owner of the Lighthouse Road property had a home address located on West Kendall Road in Yorkville, Illinois. The owner of the West Kendall property in Yorkville, Illinois was determined to be William L. Marshall.

8.      On July 10, 2008, at approximately 9:40 a.m., the CS and ISP Inspector Fillers traveled to Ogle County, where the CS led ISP Inspector Fillers to an area approximately 200 yards north of Lighthouse Road, where the entrance to the parcel of land that contained the marijuana plants is located. The CS showed ISP Inspector Fillers approximately eight marijuana plants. Each marijuana plant had chicken wire surrounding it.

9.      On July l4, 2008, at approximately 4:30 p.m., ISP Inspector Fillers, ISP Special Agent (S/A) Mike Powell, and other members of the ISP Blackhawk Area Task Force conducted surveillance on Ogle County Parcel #16-246-400-0016 in preparation for the installation of a seismic

3

camera in hopes of capturing images of a suspect in a suspected cultivated outdoor marijuana grow operation.

10.     ISP Inspector Fillers and S/A Powell surveyed the land parcel and located numerous spots that would be appropriate for placing a seismic camera. ISP Inspector Fillers and S/A Powell located numerous suspected marijuana plants throughout the property, all of which were surrounded by chicken wire. At approximately 5:30 p.m., ISP Inspector Fillers and S/A Powell left the land parcel and returned to the pre-determined location along with the remaining agents. It was determined that a seismic camera would be placed on the property the following day, July 15, at approximately 5:00 p.m.

11.     On July 15, 2008, at approximately 4:15 p.m., surveillance was established in the vicinity of the marijuana plants located on Lighthouse Road, one-half mile west of Daysville Road, Oregon, Illinois. ISP Inspector Fillers, Inspector Alex Chavira, ISP S/A Jeff Mannix and ISP S/A Mike Powell traveled by foot to install the seismic camera while the remaining agents performed mobile surveillance. At approximately 5:25 p.m., ISP Trooper/pilot Frank Ochoa observed a black pickup truck (Illinois Registration 81969K-B) with a chrome tool box in the bed entering the field entrance at Lighthouse Road one-half mile west of Daysville Road, Oregon, Illinois. Trooper Ochoa observed the vehicle drive north into the field for a distance of approximately 200 yards and stop. Trooper Ochoa observed the driver of the vehicle, who was wearing a black t-shirt and tan pants (later identified as Brian Marshall), exit the vehicle and begin tending to various marijuana plants. Trooper Ochoa also observed the passenger of the pickup, who was wearing a light gray shirt and dark pants (later identified as William Marshall), exit the vehicle and move towards the bed of the truck. Trooper Ochoa continued to observe Brian Marshall move from plant site to plant site.

4

Trooper Ochoa observed Brian Marshall enter a wooded area. Upon exiting the wooded area, Brian Marshall was not wearing a shirt. Trooper Ochoa observed Brian Marshall return to the pickup truck and grab a bucket of water and begin watering the marijuana plants in the area.

12. At approximately 5:42 p.m., Trooper Ochoa observed Brian Marshall return to the pick up truck and he and William Marshall entered the vehicle and drove north to where the path curved west, then backed the vehicle into a wooded area. Trooper Ochoa observed both subjects exit the vehicle and Brian Marshall began tending to the marijuana plants in that area while William Marshall went to the bed of the truck. Trooper Ochoa observed Brian Marshall walk southbound, watering and tending plants along the way. Trooper Ochoa observed William Marshall with a weed whacker tending to the marijuana plants. Trooper Ochoa relayed this activity to the ground surveillance units.

13. At approximately 5:52 p.m., Inspector Fillers observed Brian Marshall walk to individual plants and check the leaves and soil around the marijuana plants. At approximately 5:55 p.m., Brian Marshall was placed under arrest.

14. At approximately 6:30 p.m., ISP Sgt. Mike Britt and ISP Master Sgt. John Biffany arrested William Marshall and advised him of his Miranda rights. William Marshall stated he understood his rights and agreed to speak with law enforcement officers.

15. ISP Sgt. Mike Britt asked William Marshall what he was doing on the property and William Marshall replied, "It's obvious isn't it?" William Marshall admitted that he was there to tend to marijuana plants on the property. William Marshall said he did not know how many plants were located on the property. William Marshall claimed that he had only tended to the plants on

four occasions. William Marshall said that his son, Brian Marshall, had been there more than he had. When asked for detail about how they became involved in cultivating marijuana, William Marshall would only say that he did not want to place all of the blame on his son. William Marshall claimed that he did not know if the plants were raised from seeds or clones at another location. William Marshall denied having a grow room or growing supplies at his residence and said he was not aware of anything like that at Brian Marshall's residence.

16. According to William Marshall, he and his son (Brian Marshall) owned the property together. They paid approximately $215,000.00 for the property about one year ago and owe nothing on the property. William Marshall said they did not purchase it for the purpose of growing marijuana but still would offer no detail about how the growing operation initiated. William Marshall indicated that the property was purchased as a location for a subdivision, but because of the housing market slump they had not moved ahead with that plan.

17. On July 15, 2008, at approximately 9:27 p.m., Inspector Fillers and S/A Jeff Mannix conducted another interview of William Marshall at the Ogle County Jail. Inspector Fillers again advised William Marshall of his Miranda rights from a pre-printed Illinois State Police Statement of Constitutional Rights and Waiver form. William Marshall stated he understood his rights and wished to speak further with investigators. Inspector Fillers asked William Marshall if he knew what brought Inspector Fillers to speak with him, to which William Marshall replied, "Isn't it obvious?" Inspector Fillers asked William Marshall what he meant by that. William Marshall replied "because of the pot." Inspector Fillers asked William Marshall how he started growing marijuana. William Marshall stated that he and his son (Brian Marshall) had purchased the property on Lighthouse Road in August of 2007, in hopes of starting a tree farm. William Marshall stated

that due to the economy and the need to recuperate some of the money used to purchase the property, he and Brian Marshall began to grow marijuana on the land.  Inspector Fillers asked William Marshall if it was his idea to grow the marijuana on the property.  William Marshall stated that it was not his idea to grow the marijuana.  Inspector Fillers asked William Marshall if it was Brian Marshall's idea to grow the marijuana. William Marshall stated he could not recall whose idea it was but he (William Marshall) "didn't say no" to the idea.  Inspector Fillers informed William Marshall that it was obvious that the marijuana plants had not been grown from seed on the property.  Inspector Fillers asked William Marshall where the marijuana plants had been originally grown.  William Marshall stated he had no idea where the marijuana plants were originally grown, only that his son, Brian Marshall, "took care of all that."  Inspector Fillers asked William Marshall how many times he went to the property to care for the marijuana plants.  William Marshall stated this was only the fourth time he had been to the property to care for the marijuana plants.  William Marshall stated Brian Marshall normally goes to the property to care for the marijuana plants.  William Marshall stated he would normally make up excuses not to go with Brian Marshall.  Inspector Fillers asked William Marshall what he would normally do when he went to care for the marijuana plants.  William Marshall stated he would normally cut the weeds around the marijuana plants.  Brian Marshall would normally handle watering the plants and do the majority of the work caring for the marijuana plants.  Inspector Fillers asked William Marshall who would be responsible for selling the finished marijuana.  William Marshall laughed loudly and stated, "Certainly not me."  Inspector Fillers asked William Marshall if Brian Marshall was selling the marijuana.  William Marshall failed to answer this question.  Inspector Fillers asked William Marshall if anyone else knew he and Brian Marshall were growing marijuana.  William Marshall stated, "Loose lips sink ships," and added that

no one else knew he and Brian Marshall were growing marijuana. Inspector Fillers asked William Marshall if he would be willing to sign a consent to search form for the property, due to the fact that agents were unable to finish searching the property due to the time. William Marshall stated he would consent to another search of the property and signed an Illinois State Police Search Waiver form. At approximately 9:50 p.m., the interview of William Marshall concluded.

18. Brian Marshall and William Marshall were subsequently charged in the Circuit Court of Ogle County, Illinois with unlawful production of more than fifty marijuana sativa plants, unlawful manufacture of marijuana with the intent to deliver, unlawful possession of more than 500 grams of marijuana, and calculated criminal marijuana conspiracy.

19. Agents and Inspectors photographed and seized various items, including one hundred and ninety eight (198) marijuana plants surrounded by chicken wire, which were located throughout Ogle County Parcel #16-246-400-0016.

20. On July 2, 2008, ISP Inspector Fillers obtained certified copies of the Warranty Deed, Recorder of Deeds of Ogle County (Affidavit Plat Act), and the Illinois Real Estate Transfer Declaration (PTAX-203) from the Ogle County Clerk/Recorders Office for parcel #16-246-400-0016. These documents show that William Marshall and Brian Marshall purchased this property on August 14, 2007 for $212,000.00. There appear to be no outstanding liens on this property.

21. By reason of the foregoing, there is probable cause to find that the defendant property was used and intended to be used to facilitate felony violations of 21 U.S.C. § 841(a)(1), and therefore is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7).

WHEREFORE, the United States of America requests:

A. That the defendant property be proceeded against for forfeiture and condemnation and that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; and

B. That the court adjudge and decree that the defendant property be forfeited to the United States and that it be disposed of according to law; and

C. That this matter be resolved in a trial by jury.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: _____/s_____
MICHAEL F. IASPARRO
Assistant United States Attorney
308 West State Street - Suite 300
Rockford, Illinois 61101
815-987-4444

FILED: SEPTEMBER 2, 2008
08CV4975
JUDGE GRADY
MAGISTRATE JUDGE COLE
CH

| STATE OF ILLINOIS | ) | |
|---|---|---|
| | ) | SS |
| COUNTY OF WINNEBAGO | ) | |

## AFFIDAVIT

Marc D. Folven, being duly sworn on oath, deposes and states as follows:

1. I am a Special Agent with the United States Drug Enforcement Administration ("DEA") in Rockford, Illinois, and have been so employed for more than 19 years. My duties and responsibilities as a Special Agent with DEA involve the investigation of alleged violations of the Controlled Substances Act, Title 21 of the United States Code. Through my training and experience and my discussions with other experienced law enforcement officers, I am familiar with the methods, schemes, and operations used by individuals involved in the cultivation and sale of marijuana, a Schedule I Controlled Substance.

2. I have read the complaint in this matter and the facts alleged are true and correct to the best of my knowledge, information, and belief based upon my own personal knowledge as well as information I have received from other sources. Because this affidavit is for the limited purpose of establishing that this property is subject to forfeiture, it does not include each and every fact known to me concerning this investigation.

3. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Marc D. Folven, Special Agent
Drug Enforcement Administration

SUBSCRIBED and SWORN to before me
this 2nd day of September 2008.

_____
NOTARY PUBLIC

OFFICIAL SEAL
JAN L. MILLS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 6-26-2009